**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Carlos  Visbal |
| Debtor 2 (Spouse, if filing) | Carmen A Santos |
| United States Bankruptcy Court for the: | Southern    District of    Florida (State) |
| Case number | 21-11043-RAM |

Official Form 410S1

# Notice of Mortgage Payment Change

12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

| | | |
|---|---|---|
| **Name of creditor:** | Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-4, Home Equity Pass-Through Certificates, Series 2006-4, U.S. Bank National Association, as Trustee C/O Specialized Loan Servicing LLC | **Court claim no.** (if known):    4-1 |

**Last four digits** of any number you use to identify the debtor's account:    9379

**Date of payment change:**
Must be at least 21 days after date of this notice    02/01/2022

**New total payment:**
Principal, interest, and escrow, if any    $2,336.18

---

| **Part 1:** | **Escrow Account Payment Adjustment** |
|---|---|

1. **Will there be a change in the debtor's escrow account payment?**
   - ☒ No
   - ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

   Current escrow payment:    $ _____    New escrow payment:    $ _____

| **Part 2:** | **Mortgage Payment Adjustment** |
|---|---|

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**
   - ☐ No
   - ☒ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law.  If a notice is not attached, explain why:

   | | | |
   |---|---|---|
   | Current interest rate: | 3.0000% | New interest rate:    4.0000% |
   | Current principal and interest payment | $1,632.02 | New principal and interest payment:    $1,826.22 |

| **Part 3:** | **Other Payment Change** |
|---|---|

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**
   - ☒ No
   - ☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. *(Court approval may be required before the payment change can take effect.)*

   Reason for change: _____

   Current mortgage payment:    $ _____    New mortgage payment:    $ _____

| Debtor 1 | Carlos  Visbal | Case Number *(if known)* | 21-11043-RAM |
|---|---|---|---|
| | First Name        Middle Name        Last Name | | |

| Part 4: | Sign Here |
|---|---|

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐    I am the creditor.

☒    I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.**

**✗** /s/ Matthew Tillma               Date   12/23/2021

   Signature

Print:   Matthew Tillma            Title   Authorized Agent for Specialized Loan Servicing LLC

   First Name        Middle Name        Last Name

Company   Bonial & Associates, P.C.

Address   14841 Dallas Parkway, Suite 425

   Number        Street

   Dallas, Texas  75254

   City        State        Zip Code

Contact phone   (972) 643-6600       Email   POCInquiries@BonialPC.com

**CERTIFICATE OF SERVICE OF NOTICE OF MORTGAGE PAYMENT CHANGE**

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties in interest on or before      December 27, 2021      via electronic notice unless otherwise stated.

**Debtor**                    *Via U.S. Mail*
Carlos Visbal
290 Lawn Way
Miami, FL 33166

**Debtor**                    *Via U.S. Mail*
Carmen A Santos
275 NE 18th Street, #1707
Miami, FL 33132

**Debtors' Attorney**
Angelena M Conant
Attorney At Law
1931 Cordova Road, #303
Fort Lauderdale, FL  33316

**Chapter 13 Trustee**
Nancy K. Neidich
PO Box 279806
Miramar, Florida 33027

Respectfully Submitted,

/s/  Matthew Tillma

CFN: 20160131327 BOOK 29984 PAGE 3694
DATE:03/03/2016 10:42:56 AM
MTG DOC 1,038.45
INTANGIBLE 593.35
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

This Document Prepared By:
**STARSHEMA N REAMS**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC#** ▮▮▮
**FORT MILL, SC 29715**
(800) 416-1472

When recorded mail to: #▮▮▮
First American Title ▮▮▮
Loss Mitigation Title Services ▮▮▮
P.O. Box 27670
Santa Ana, CA 92799
RE▮

Tax/Parcel #: ▮▮▮

_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| **Original Principal Amount: $388,928.00** | **Prev. Rec. Mod. Loan Amt: $0.00** |
| **Unpaid Principal Amount: $381,161.30** | **Investor Loan No.:** ▮▮▮ |
| **New Principal Amount $677,838.01** | **Loan No: (scan barcode)** |
| **Total Cap Amount: $296,676.71** | |

# HOME AFFORDABLE MODIFICATION AGREEMENT
# (MORTGAGE)

Executed on this day: **DECEMBER 24, 2015**
Borrower ("I"):[1] **CARLOS VISBAL AND CARMEN SANTOS, HUSBAND AND WIFE**
Borrower Mailing Address: **275 NE 18 STREET #1707, MIAMI, FLORIDA 33132**
Lender or Servicer ("Lender"): **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., HOME EQUITY ASSET TRUST 2006-4, HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-4**
Lender or Servicer Address: **60 LIVINGSTON AVENUE, SAINT PAUL, MN 55107**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **FEBRUARY 3, 2006** and the Note ("Note") date of **FEBRUARY 3, 2006**

Property Address ("Property"): **275 NE 18 STREET #1707, MIAMI, FLORIDA 33132**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

CFN: 20160131327 BOOK 29984 PAGE 3695

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**Prior instrument reference: Recorded on FEBRUARY 23, 2006 in BOOK 24262  PAGE 4931, of the Official Records of MIAMI-DADE COUNTY, FLORIDA**

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **Borrower Representations.**

    I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. I certify the Property is not condemned and is not vacant without the intent to either re-occupy or rent;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;

    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

    G. I have made or will make all payments required within this modification process.

    H. Borrower filed for relief under Chapter **13** of the United States Bankruptcy Code on **SEPTEMBER 15, 2014.**

    I. This agreement is only valid once consent of the United States Bankruptcy Court or other applicable approval to modify this mortgage is received.

    J. Prior to filing for relief under the United States Bankruptcy Code, Borrower agreed to repay the above referenced loan pursuant to the Note and Security Instrument between Lender and Borrower. Such agreement granted Lender a valid security interest and an enforceable lien on the property

Wells Fargo Custom Home Affordable Modification Agreement - Non-GSE with PRA

First American Mortgage Solutions                                    Page 2

CFN: 20180131327 BOOK 29984 PAGE 3696

securing the loan.

K. Notwithstanding anything to the contrary contained in this Agreement, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. Borrower and Lender agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

L. Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security interest and lien are still valid and enforceable.

M. Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement, and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property.

## 2. Acknowledgements and Preconditions to Modification.

I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and,

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

C. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

## 3. The Modification.

If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **FEBRUARY 1, 2016** and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a Mortgage Assistance or trial period plan, this modification will not take effect. The first modified payment will be due on **FEBRUARY 1, 2016**.

A. The new Maturity Date will be: **AUGUST 1, 2036**.

B. The modified principal balance of my Note will include amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of the HAMP modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$677,838.01** (the "New Principal Balance"). I understand that

by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. **$209,280.25** of the New Principal Balance shall be an interest bearing lump sum payment and I will pay interest on this amount in my monthly modified payment. This lump sum shall be due at time of loan maturity or earlier upon payoff of the loan. In addition, **$263,838.01** of the Deferred Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of **JANUARY 1, 2015**, the lender shall reduce the Deferred Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Reduction Amount shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$414,000.00**. Interest at the rate of **2.0000%** will begin to accrue on the Interest Bearing Principal Balance as of **JANUARY 1, 2016** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **FEBRUARY 1, 2016**. Interest due on each monthly payment will be calculated by multiplying the New Principal/Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). My payment schedule for the modified loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 60 | 2.0000% | 01/01/2016 | $1,444.51 | $780.72 | $2,225.23 | 02/01/2016 |
| 12 | 3.0000% | 01/01/2021 | $1,632.02 | $780.72 | $2,412.74 | 02/01/2021 |
| 174 | 4.0000% | 01/01/2022 | $1,826.22 | $780.72 | $2,606.94 | 02/01/2022 |
| Balloon | 4.0000% | N/A | $209,280.25 which is an estimated amount | | | 08/01/2036 |

**\*This includes an escrow shortage amount to be paid over the first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law therefore, the total monthly payment may change accordingly.**

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

CFN: 20180131327 BOOK 29984 PAGE 3698

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C

F.  I agree to pay in full the Deferred Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

**Notice to Borrower:** The Deferred Balance will result in a lump sum payment due at the time of loan maturity or earlier upon payoff of the loan. If you do not have the funds to pay the lump sum payment when it comes due, you may have to obtain a new loan against your property. In that case, you may have to pay commissions, fees, and expenses for the arranging of the new loan. In addition, if you are unable to make the monthly payments or the lump sum payment, you may lose the property and all of your equity through foreclosure. Keep this in mind in deciding upon this modification. The lump sum payment on this loan is due **AUGUST 1, 2036** or upon earlier payoff of the loan.

4.  **Additional Agreements.**

I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Mortgage Assistance that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.  **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or

CFN: 20160131327 BOOK 29984 PAGE 3699

ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

CFN: 20160131327 BOOK 29984 PAGE 3700

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d)

CFN: 20160131327 BOOK 29984 PAGE 3701

companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree, that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.O. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants, **America's Servicing Company**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification.

Q. If the mortgage is a biweekly mortgage with payments due every two weeks, through the attached modification agreement, the Loan will convert to a MONTHLY payment schedule. To accommodate monthly payments, interest will be charged based on a 12 month year and a 30 day month. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan is cancelled. Complete the enclosed Automatic Loan Payment Authorization form to establish automatic payment drafting.

R. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit and if so, I confirm and acknowledge that no additional advances may be obtained.)

S. By signing this Agreement the Borrower hereby consents to being contacted concerning their loan at any cellular or mobile telephone number they may have. This includes text messages and telephone calls including the use of automated dialing systems to contact any cellular or mobile telephone. The Borrower may be billed by the cellular or mobile carrier for any text messages that Lender may send. Any calls Lender places to the Borrower's cellular or mobile phone may incur normal airtime charges assessed by the mobile carrier.

T. **Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due. This Mortgage is given in connection with the refinancing of an obligation secured by an existing mortgage, recorded in Official Records BOOK 24262 PAGE 4931, Public Records of**

CFN: 20160131327 BOOK 29984 PAGE 3702

**MIAMI-DADE COUNTY, Florida** from the Mortgagor hereunder to the Mortgagee hereunder, or to the assignor of the Mortgagee hereunder. As of the date of refinancing, the unpaid principal balance of the original obligation, plus accrued but unpaid interest, secured by the existing mortgage is equal to U.S. $381,161.30. The principal balance of the new obligation secured by this Mortgage is U.S. $677,838.01, which amount represents, as of the refinancing, the excess of the unpaid principal balance of the original obligation, plus accrued but unpaid interest. Notwithstanding anything to the contrary contained in the foregoing, if the obligor under the new obligation is not liable to the obligee under the obligation secured by this Mortgage, then the additional nonrecurring intangible tax shall be computed on the entire principal balance of the new obligation.

All Borrowers are required to sign and date this Agreement in blue or black ink only as your name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to you to be signed.

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

In Witness Whereof, I have executed this Agreement.

Borrower:CARLOS VISBAL

Date
1-5-16

Borrower:CARMEN SANTOS

Date

Borrower:

Date

Borrower:

Date

_____ [Space Below This Line for Acknowledgments] _____

## BORROWER ACKNOWLEDGMENT

STATE OF Florida
COUNTY OF Miami-Dade

The foregoing instrument was acknowledged before me this January 5, 2016 by
CARLOS VISBAL, CARMEN SANTOS who is personally known to me or who has produced
Driver License as identification

Notary Public

Print Name: Yelina Pena Araya

My commission expires:
6/24/2017

Commission # FF030469

YELINA PENA ANAYA
MY COMMISSION #FF030469
EXPIRES June 24, 2017
(407) 398-0153    FloridaNotaryService.com

CFN: 20160131327 BOOK 29984 PAGE 3704

In Witness Whereof, the Lender have executed this Agreement.

**WELLS FARGO BANK, NA AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., HOME EQUITY ASSET TRUST 2006-4, HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-4**

By: (print name)     **Halimo Y Adem**       _____ (sign)      01 / 11 / 16

(title)     **Vice President Loan Documentation**       Date

_____ [Space Below This Line for Acknowledgments] _____

STATE OF ___ MN ___      COUNTY OF ___ Dakota ___

The instrument was acknowledged before me this ___ 1/11/16 ___ by

___ Halimo Y Adem ___, the

**Vice President Loan Documentation**     of **WELLS FARGO BANK, NA AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., HOME EQUITY ASSET TRUST 2006-4, HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-4,**

a ___ **Vice President Loan Documentation** ___, on behalf of said company.

Notary Public

Printed Name: **Griscelda Ruiz Espinoza**

My commission expires: ___ 1/31/20 ___

**GRISCELDA RUIZ ESPINOZA**
**NOTARY PUBLIC - MINNESOTA**
**MY COMMISSION EXPIRES 1/31/20**

**THIS DOCUMENT WAS PREPARED BY:**
**STARSHEMA N REAMS**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC#** ▮▮▮▮
**FORT MILL, SC 29715**

## EXHIBIT A

**BORROWER(S):  CARLOS VISBAL AND CARMEN SANTOS, HUSBAND AND WIFE**

**LOAN NUMBER:  (scan barcode)**

**LEGAL DESCRIPTION:**

**UNIT NO. 1707 IN 1800 BISCAYNE PLAZA, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, RECORDED NOVEMBER 21, 2005, IN OFFICIAL RECORDS BOOK 23981, PAGE 1388, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA. TOGETHER WITH ALL THE TENEMENTS, HEREDITAMENTS AND APPURTENANCES THEREUNTO BELONGING OR IN ANYWISE APPERTAINING.**

**TAX/PARCEL NO. 01-3231-059-1330**

**ALSO KNOWN AS: 275 NE 18 STREET  #1707, MIAMI, FLORIDA 33132**